[No. 20190.  Department Two.  January 5, 1927.]

THE STATE OF WASHINGTON, *Respondent*, v. CARL
BREHAN *et al., Appellants.*[1]

[1] CRIMINAL LAW (229)—TRIAL—SCOPE OF EVIDENCE—REBUTTAL.
Error cannot be predicated upon the admission of rebuttal
evidence tending to contradict the plaintiff's alibi that he was
with one G. W. at a certain time and place, where there was
evidence that the same G. W. was at a different place at such
time.

[2] SAME (240)—MISCONDUCT OF PROSECUTING ATTORNEY—COMMENTS
ON EVIDENCE.  It is not improper conduct on the part of the
prosecutor cross-examining accused on his having stated that
he stopped at a certain hotel, to ask, in the presence of the
jury, if he was willing to go with a police officer and show
the hotel at which he had stopped.

[4] CRIMINAL LAW (384)—APPEAL—PRESERVATION OF GROUNDS—
NECESSITY OF OBJECTIONS.  Error cannot be assigned upon the
introduction in evidence of articles which a witness testified
were taken from him by the accused at the time of a robbery,
where there was no objection made to their introduction at the
trial.

[5] CRIMINAL LAW (183)—EVIDENCE—SUFFICIENCY—IDENTITY OF
ACCUSED.  The fact that the witness stated that two of the
three defendants committing a robbery were short and one
was tall, when in fact they were all short, does not show that
the evidence was insufficient to warrant a conviction, where
all three were identified by the witness at the trial.

Appeal from a judgment of the superior court for
Pierce county, Chapman, J., entered January 8, 1926,
upon a trial and conviction of robbery.  Affirmed.

*Lloyd & Croteau* and *Hayden, Langhorne & Metzger,*
for appellants.

*Robert B. Abel* and *J. W. Selden,* for respondent.

ASKREN, J.—This is an appeal from a conviction of
robbery.

[1]Reported in 252 Pac. 128.

Early on the morning of October 15, 1925, one Burnett, who was conductor and motorman on one of the street car lines in the city of Tacoma, was held up by three unmasked men, one of whom had a revolver, and robbed of his watch and $11.65 in money. The following day the watch was sold to a pawnbroker in that city. Two days later the defendants Thompson and Brehan were arrested in a room occupied by them, and from it was taken a Colt automatic army model revolver, identified by the complaining witness as being of the same kind and character as the one used in the robbery. All the defendants offered evidence of an alibi, but the jury returned a verdict finding Thompson and Brehan guilty, and acquitting Harper. Thompson and Brehan appeal.

[1] Many assignments of error are urged. It is first claimed that the court erred in admitting the evidence of two witnesses, Joseph Wilson and D. Wilson, father and son, respectively. The appellant Thompson, in support of his alibi, testified that at the time of the robbery he was living at the Central Hotel in Seattle with a man by the name of George Wilson. In rebuttal the state sought to show by the two witnesses referred to that George Wilson was the son of Joseph Wilson, and brother of D. Wilson; that he was not mentally right, and that at the time referred to was not in Seattle. Appellant objected upon the ground that the George Wilson of Tacoma was not the George Wilson appellant referred to. The record in this connection is far from being as complete as one could wish for. In explanation, it should be said that the stenographer who took the testimony in shorthand had died before his notes could be transcribed, and no reporter could be found who could read the notes. In this dilemma, the trial judge had to rely upon his memory

and that of the attorneys in certifying the record to this court, and the record is therefore shorn of many things necessary to make a harmonious whole.

The court admitted the testimony of both father and son. But before the objection was made, the witness D. Wilson had testified that he had a brother named George Wilson, and that he was the same George Wilson to whom appellant Thompson had referred in his testimony. Nothing appears in the record as to the examination of the witness in any wise challenging his statements that his brother was the same George Wilson referred to by appellant.

But even if the court should have refused this testimony, we do not see any harmful error therein. If appellant insisted to the jury that it was not the same person, then we merely have a case where the court permitted evidence as to where a certain George Wilson was on the night in question, with the appellant arguing to the jury that it was not the one he had reference to. Plainly, it seems to us, if the jury believed this was not the George Wilson referred to by appellant, then any evidence as to this one could not, by any stretch of the imagination, prejudice or mislead them.

[2] It is urged that the prosecutor was guilty of misconduct. The evidence discloses that, after the appellant had testified that he stopped at the Central Hotel in Seattle, he was cross-examined immediately upon this point, and he gave the address as First avenue, Seattle, and specified the telephone number. The prosecutor, not being satisfied with the address given, asked the witness if he was willing to go with a police officer to Seattle and show the hotel at which he was registered. The appellant answered in the affirmative. Upon objection being made, one of which was that it

was requiring appellant to give evidence against himself, the following occurred:

"THE COURT: No, he cannot compel him to give evidence against himself. If he doesn't want to go he doesn't have to.

"MR. ABEL: Well, he claims he wants to be fair.

"MR. LLOYD: The state is not fair in making this request or suggestion in the presence of the jury.

"THE COURT: The state is fair.

"MR. LLOYD: We, at this time, if Your Honor please, assign as misconduct of the prosecuting attorney the request or demand and statement addressed to the witness in the presence of the jury during the argument upon this motion, and including the request, are such that they cannot be cured by an instruction; and we now ask that the jury be discharged from further consideration of this case.

"THE COURT: Motion overruled; exception allowed."

That evening the appellant, in company with officers from the sheriff's office, went to Seattle to point out the hotel. The following morning the appellant resumed the witness chair and testified that the name of the hotel was The New England Hotel, and underneath it was a Central Employment Agency, and across the street was a Central Grill; that the hotel was on First avenue, and the telephone number was as previously given. That he was mistaken the previous day in the name of the hotel.

It is said that the request of the appellant as to whether he would go with an officer to point out the hotel was misconduct on the part of the prosecutor, and was an infringement of appellant's constitutional rights in that it required him to give evidence against himself. It may be true that it literally required the appellant to give evidence against himself, but it was only by explanation of evidence offered in chief as part

of his defense, and it is not that character of evidence that is prohibited by the constitution. Every answer or admission wrung from a defendant by cross-examination is in effect requiring him to give evidence against himself.

Reliance is placed on *State v. Jackson*, 83 Wash. 514, 145 Pac. 470, where we reversed a conviction of conspiracy. In that case it was the contention of the state that a draft of the city of Raymond and a certain written statement would tend to prove the crime charged. Prior to trial, the state made a demand upon the defendants to produce those documents. The demand being refused, at the trial two witnesses were called to give secondary evidence of their contents, and the prosecutor, in the presence of the jury, renewed his demand for the papers.

It was there held that the action infringed the constitutional guarantee. But we fail to find any analogy between that case and this. They might be parallel, if in this case the state had demanded of the appellant that he produce the gun or watch, or other articles tending to prove the commission of the crime. Here the appellant voluntarily testified on direct examination that he stopped at a certain hotel. Cross-examination upon this point would be futile unless it established the truth or falsity of this testimony. The fallacy of appellant's contention can easily be established by a simple illustration: Suppose a defendant testifies upon his examination in chief that he signed a certain document which he holds in his hand. Could it be contended that, if the state asked him to point out his signature thereon, his rights had been invaded? Or, if a defendant should testify that an occurrence took place under a certain tree in the court yard, would the state be prohibited from asking him to step to the window and point out the tree?

Nor is *State v. O'Hara,* 17 Wash. 525, 50 Pac. 477, helpful to appellant. In that action defendant was under indictment for arson. The state offered in evidence some letters and a notice purporting to have been written by him. Upon cross-examination, over objection, he was compelled to admit that the notice and letter had been written by him. We held that the evidence was a violation of the constitutional right here in question, for the testimony was against the interests of the defendant, the state not having been able to identify the handwriting. While the opinion does not so state, we think it a fair assumption that the defendant. there had offered no evidence regarding the documents. But if the defendant there had testified regarding them, it would not be a violation of his constitutional rights to require the pointing out of any specific thing therein referred to in his examination in chief.

The distinction between that case and the one at bar is apparent, and the confusion results from the failure of appellant's counsel to distinguish between the witness being required to produce evidence needed by the state to convict, and cross-examination of a defendant as to those things which he has himself offered in evidence. If the objection here urged were to be upheld, every defendant in a criminal action could bar the state from probing the truth or falsity of his statements, as to his whereabouts, whenever an alibi is offered as a defense to a criminal charge, except by the production of other witnesses. But the right to cross-examine a defendant in a criminal case is not so restricted, and the law sponsors no such incongruities as are here suggested. It follows that there was no misconduct in asking the question.

[3] It is next said that the court commented on the evidence when it used the expression, ''The state

is fair," in the colloquy between counsel and the court, which we have set out.

The constitutional inhibition is against commenting on the evidence. This remark had nothing to do with the evidence in the case, and was in response to the statement of counsel for the appellant to the court that "The state is not fair in making this request in the presence of the jury." We think the court's remark cannot be construed to mean anything more than that there was nothing unfair in making the request in the presence of the jury. In this, we see no error. We have already seen that the request was a proper one, and we cannot see that for the court to so hold and state in open court can either be said to be a comment upon the evidence, or an indication to the jury as to what the court thought of the case.

[4] Appellant Brehan assigns as error the admission of the watch in evidence upon the claimed ground that the statement of facts does not show that the watch, being Exhibit "B," was the one taken from Burnett the night of the robbery. We have heretofore adverted to the fact that the record is incomplete. It does show, however, that this watch was introduced in evidence during Burnett's testimony, immediately following his description of the things taken from him during the robbery. The pawnbroker testified that this watch was sold to him by defendant Thompson. On neither occasion was any objection made to the reception of the watch in evidence. It is inconceivable to our minds how the prosecutor, without any identification of the watch, would offer it in evidence, have a learned trial judge admit it, and all without any objection from any of the able counsel who appeared for the appellants. To so hold is to convict not only the prosecutor and the court, but

counsel for appellants of rank incompetency. This we decline to do.

The same is true of the error assigned in admitting in evidence State's Exhibit "C," which was a report of the pawnbroker to the police. No objection having been made at any time during the trial, it is too late to urge this error now.

Both appellants urge misconduct of the prosecutor in the method of examining witnesses and in argument. It is unnecessary to set these out in detail. We have examined the record with care and are unable to hold that the prosecutor exceeded the bounds of due decorum or that any statement was made by him that would have warranted the trial court in granting a new trial.

[5] Lastly, it is contended that the evidence was insufficient to justify the verdict. The main basis of this contention is that, because the complaining witness, in describing the men charged, referred to two of them as being tall and the other short, when in fact they were all short men, his evidence is not credible. But the question of height is always a comparative one. While on the witness stand, he insisted on saying that two of them were tall, even though they stood up before him and their measurements were given. The identification by the state's witness was sufficient, if believed by the jury, to warrant the verdict. There is no reversible error in the record.

Judgment affirmed.

TOLMAN, C. J., PARKER, and MACKINTOSH, JJ., concur.